**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| MARILEE BROWN, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 02-5556 (JAG) |
| v. | : | |
| | : | **OPINION** |
| GALE NORTON, as Secretary of the U.S. Department of the Interior, THE UNITED STATES FISH AND WILDLIFE SERVICE, | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion for summary judgment by Defendants Gale Norton ("Norton") and the United States Fish and Wildlife Service (the "FWS," and, collectively with Norton, "Defendants"), pursuant to FED. R. CIV. P. 56. For the reasons set forth below, Defendants' motion shall be denied.

**II. BACKGROUND**

Plaintiff has been employed by the FWS as a Special Agent since approximately June 11, 1995. On or about October 15, 1995,[1] Plaintiff was assigned to FWS's field office in Elizabeth, New Jersey (the "New Jersey Field Office").

Plaintiff's sister, Marilou Brown, was also an FWS employee, albeit at a different field

---

[1] Plaintiff's brief states, presumably in error, that Plaintiff was assigned to the New Jersey Field Office on or about October 15, 2005. (Pl. Br. 8.)

office location.  While working at the New Jersey Field Office, Plaintiff assisted her sister in filing an EEO claim of discrimination.

Over the course of her employment at the New Jersey Field Office, Plaintiff also filed four EEO Complaints of her own.  The first EEO Complaint, dated July 6, 1998, recited various instances in which she perceived that she was discriminated against for helping her sister file an EEO claim.  (United States Department of the Interior Complaint of Discrimination dated July 6, 1998, attached as Ex. A to Certif. of Leah A. Bynon ("Bynon Cert.").)  In the first EEO Complaint, Plaintiff sought as relief "[r]emoval from the hostile work environment, Newark - NJ & Region 5."  (Bynon Cert. Ex. A.)

In the second EEO Complaint, dated February 24, 1999, Plaintiff alleged discrimination on the bases of gender, perceived mental handicap, and reprisal for prior EEO activity.  (United States Department of the Interior Complaint of Discrimination dated February 24, 1999, attached as Ex. D to Bynon Cert.)  Plaintiff's third EEO Complaint, dated April 14, 1999, also alleged that she was discriminated against on the bases of her gender and her prior EEO activity.  (United States Department of the Interior Complaint of Discrimination dated April 14, 1999, attached as Ex. G to Bynon Cert.)

On October 11, 2001, the United States Department of the Interior's Office for Equal Opportunity (the "Agency") issued a final agency decision resolving the first three EEO Complaints filed by Plaintiff.  (Letter from E. Melodee Stith, Director of Office for Equal Opportunity, dated October 11, 2001, attached as Ex. C to Bynon Cert.)  In conformance with Plaintiff's request, the Agency analyzed the allegations "only on the basis of reprisal as related to a hostile work environment."  (Bynon Cert. Ex. C.)  The decision concluded by stating that

Plaintiff's allegations did not give rise to a harassment claim or a hostile work environment claim. (Bynon Cert. Ex. C.)

Plaintiff filed a fourth EEO Complaint, dated April 20, 2001, alleging discrimination on the basis of reprisal for performing EEO activity; specifically, the filing of three prior EEO Complaints and the request for review of a disciplinary action taken by the Merit Systems Protection Board. (United States Department of the Interior Complaint of Discrimination dated April 20, 2001, attached as Ex. L to Bynon Cert.) In a letter dated April 23, 2002, the Agency issued a final decision resolving Plaintiff's fourth EEO Complaint. The decision stated that Defendants' actions did not give rise to claims for reprisal, harassment, or a hostile work environment. (Letter from E. Melodee Stith, Director of Office for Equal Opportunity, dated April 23, 2002, attached as Ex. N to Bynon Cert.)

Plaintiff filed her initial Complaint against Defendants on February 15, 2002 and, by leave of this Court, an Amended Complaint on January 31, 2005. In the Amended Complaint, Plaintiff alleges that Defendants: engaged in discriminatory retaliation against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (Count I); engaged in discriminatory retaliation in violation of N.J. STAT. ANN. § 34:19-3 (Count II); and failed to pay wages in violation of both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 (Count III), and N.J. STAT. ANN. § 34:11-56a (Count IV). In an Opinion dated October 17, 2005, this Court dismissed the state law claims raised in Counts II and IV of the Amended Complaint, leaving Counts I and III to be resolved.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations omitted).)  Once the moving party has satisfied its initial burden, the party opposing the motion must

4

establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III. ANALYSIS

**A.     Count I - Title VII Claim**

In addressing Plaintiff's Title VII claim, Defendants express three reasons that, collectively, support an entry of judgment in their favor. First, Defendants argue that Plaintiff is limited in this action to raising factual issues that have been accepted and reviewed by the Agency. Second, Defendants contend that a number of the allegations in the Amended Complaint are untimely. Last, Defendants explain that Plaintiff has failed to state a retaliation claim for any of the remaining allegations in the Amended Complaint. Defendants' arguments focus on the presumption that "[P]laintiff only sets forth a claim for retaliation based on EEO activity." (Def. Br. 24) (emphasis in original.)

As a threshold matter, this Court must first define the cause of action raised by Plaintiff in

Count I of the Amended Complaint. Defendants argue that Plaintiff failed to raise a hostile work environment retaliation claim in the Amended Complaint, and instead alleged each incident as a separate and distinct retaliation claim.

While Count I is labeled "Retaliation For Engaging in Protected Activity Pursuant to 42 U.S.C. §§ 2000 et seq., the Amended Complaint, taken as a whole, clearly presents a hostile work environment claim. The Amended Complaint discusses Plaintiff's perception of the workplace as a hostile work environment on eleven occasions in the Statement of Facts:

> THIRTY NINTH: On or about February 1997, Plaintiff contacted [Assistant Regional Director George Adam] O'Hara and informed him that due to her protected activity of assisting Marilou with her EEO complaint, she felt [Resident Agent in Charge John] Meehan had created a hostile working environment for her.
>
> FORTIETH: Due to the hostile working environment, Plaintiff requested a transfer to a different location from O'Hara.
>
> FORTY FOURTH: O'Hara's action of not selecting Plaintiff for the transfer to Maryland, with full knowledge of Plaintiff's hostile working environment, was done in retaliation of her EEO assistance to Marilou.
>
> SEVENTY SEVENTH: [EEO ARD Hector] Ruiz advised Plaintiff to file an EEO complaint because [Deputy Assistant Regional Director Terry] Tarr and O'Hara refused to intervene and remedy Plaintiff's hostile working environment.
>
> NINETY THIRD: Later that same day, Plaintiff contacted Deputy Regional Director Kathy Short . . . , requesting a transfer out of her hostile working environment.
>
> NINETY SIXTH: Tarr also told Plaintiff that he "knew she was filing" an EEO complaint of her own, and denied any transfer from a hostile working environment, despite at least one (1) position being vacant.
>
> ONE HUNDREDTH: On or about January 1998, Plaintiff began

>   seeking mental health counseling from the Employee Assistance
>   Program for the stress caused [by] her hostile working
>   environment, due to the retaliation against her.
>
>   ONE HUNDRED FOURTH:  On or about March 1998, Plaintiff
>   contacted Chief Kevin Adams, . . . as well as Tarr and O'Hara,
>   requesting a transfer from her hostile working environment.
>
>   TWO HUNDRED SIXTEENTH:  However, Plaintiff has
>   continuously reported she is in a hostile working environment.
>
>   TWO HUNDRED FORTY SIXTH:  In October of 1999, Plaintiff
>   and Meehan attended an Office of Workers' Compensation
>   Programs [sic] . . . Hearing related to Plaintiff's claim of mental
>   stress caused by her hostile work environment.
>
>   TWO HUNDRED NINETY NINTH:  In October 2002, Plaintiff
>   was finally able to obtain a transfer out of her hostile working
>   environment to a Defendant office in Oregon.

(Compl. ¶¶ 39-40, 44, 77, 93, 96, 100, 104, 216, 246, 299.)  Plaintiff unequivocally demonstrated her intent to raise a hostile work environment Title VII claim by reiterating that term of art throughout the Amended Complaint.

Plaintiff's request that her EEO Complaints be analyzed as a hostile work environment claim further supports this conclusion.  Indeed, Defendants admit that Plaintiff "set forth a hostile work environment claim in the underlying EEO complaints . . . ."  (Def. Br. 23-24.)

After identifying Count I as a hostile work environment claim, this Court is unpersuaded by Defendants' argument that Plaintiff may only present factual issues accepted and reviewed by the Agency during the administrative review process.

Title VII requires federal employees to exhaust administrative remedies before filing a claim in court.  42 U.S.C. § 2000e-16(c); see also Loeffler v. Frank, 486 U.S. 549, 559 (1988) ("[Section] 717(c) [of Title VII] permits an aggrieved employee to file a civil action in federal

7

district court, provided the employee has met certain requirements regarding exhaustion of administrative remedies."). "[E]xhaustion requires both consultation with an agency counselor and filing a formal EEOC complaint within the required times." Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997).

However, the "exhaustion of administrative remedies in a Title VII case does not require an exact correspondence between the face of the EEOC charge and the face of the district court complaint." Young v. School Dist. of Phila., No. 06-4485, 2007 WL 2319767, at *2 (E.D. Pa. Aug. 10, 2007). Plaintiff should not be barred from presenting additional facts that were not expressly stated in the EEO Complaints, if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Young, 2007 WL 2319767, at *2 (citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)). "Requiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory acts fell squarely within the scope of the earlier EEOC complaint or investigation." Perry, 82 F.3d at 1295.

This Court finds that the facts alleged in this action are fairly within the scope of the claims presented in Plaintiff's four EEO Complaints. Plaintiff intended to present in the four EEO Complaints the same claim she raised in the Amended Complaint, namely, a retaliation-based hostile work environment claim based on the circumstances present during her employment at the New Jersey Field Office. None of the facts set forth in the Amended Complaint reference events that were outside the scope of the Agency's investigation. Defendants do not even specify which facts in the Amended Complaint were not included in the EEO Complaints, but instead makes a vague assertion that, "to the extent the [First Amended]

Complaint sets forth allegations outside the scope of the administrative review, those allegations and claims must be dismissed for failure to exhaust." (Def. Br. 19.)

This Court is equally unconvinced that Defendants' claim that certain allegations in the Amended Complaint are untimely. Title VII requires federal employees to initiate contact with an EEO counselor at the agency within forty-five days of the date on which the discriminatory act occurred. 29 C.F.R. § 1614.105(a)(1). A federal employee's obligation to initiate contact with an EEO counselor functions akin to a statute of limitations, such that a failure to comply with this requirement may render a claim time-barred. Robinson, 107 F.3d at 1021. Defendants contend that Plaintiff contacted the EEO counselor on March 23, 1998, and that, consequently, any allegations that occurred prior to February 6, 1998 are time-barred.

Since Count I is construed as a retaliation-based hostile work environment claim, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Here, the Amended Complaint discusses incidents occurring between June of 1995 and October of 2002, all of which allegedly contributed to the hostile work environment. A number of these incidents occurred after February 6, 1998, within the permissible time period imposed under Title VII. As a result, all of the facts noted in the Amended Complaint may be considered as part of Plaintiff's hostile work environment claim, irrespective of the date of their occurrence.

The construction of Count I as a hostile work environment claim also thwarts Defendants' substantive arguments supporting summary judgment. This Court must take into

9

account the totality of the circumstances when determining whether Plaintiff labored under a hostile work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Benny v. Pa., Dept. Of Corr., State Corr. Inst. at Somerset, 211 F. App'x 96, 97 (3d Cir. 2006). "As such, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Caver v. City of Trenton, 45 F.3d 744, 753 (3d Cir. 1995). A claim alleging a hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Morgan, 536 U.S. at 115.

Defendants' summary judgment brief relies principally on the belief that Plaintiff failed to raise a hostile work environment claim. Consequently, Defendants provide individual explanations for each allegation, rather than analyzing the cumulative effect of the alleged acts. However, Defendants' rebuttal to each discrete allegation raised in the EEO Complaints does not suffice to warrant entry of judgment in their favor. While the allegations may be innocent in isolation, they may, when taken as a whole, suffice to create a hostile work environment.

Defendants have not set forth any arguments as to why the cumulative effect of Plaintiff's allegations did not produce a hostile work environment as a matter of law. Therefore, Defendants shall not be awarded summary judgment for Plaintiff's Title VII claim.

### B.    Count II - Fair Labor Standards Act Claim

Defendants argue that Plaintiff's FLSA claim should be dismissed[2] because Plaintiff has failed to set forth evidence showing that the violation was "willful," so as to permit application of the three-year statute of limitations.

---

[2] The appropriate relief on a motion for summary judgment is merely the grant or denial of the motion, not the dismissal, with or without prejudice, of the complaint. Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999).

This Court stated in its Opinion dated October 17, 2005 that Plaintiff's FLSA claim, which undisputably violated the two-year statute of limitations, survived dismissal because Plaintiff stated a valid claim for a willful violation of the FLSA, thereby triggering the three-year statute of limitations set forth in 29 U.S.C. § 255(a).  This determination did not, as Plaintiff would have this Court believe, indicate that Plaintiff will ultimately prevail on her FLSA claim. "The determination of whether a FLSA violation was willful is a question of law on which the plaintiff bears the burden of proof." Wolfslayer v. Ikon Office Solutions, Inc., No. 03-6709, 2004 WL 2536833, at *10 (E.D. Pa. Nov. 8, 2004), citing, inter alia, Martin v. Selker-Bros., Inc., 949 F.2d 1286, 1292 (3d Cir. 1991) (holding that willfulness is a question of law).  While Plaintiff raised sufficient allegations in the Amended Complaint to avoid dismissal of her FLSA claim under FED. R. CIV. P. 12(b)(6), she clearly has not yet satisfied this burden regarding summary judgment considerations.

Plaintiff, as the non-moving party, is not required at this stage of the litigation to show that Defendants willfully violated the FLSA, either.  To defeat Defendants' motion for summary judgment on this claim, Plaintiff is only required to present evidence showing a genuine dispute of material fact regarding the willfulness of the alleged violation.

This Court finds that Plaintiff has accomplished that feat.  A FLSA violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was statutorily prohibited.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 136 (1988).

Plaintiff alleges in the Amended Complaint that, under an agreement with the FWS, she worked as an air marshal with the Federal Aviation Administration (the "FAA") for the period from October of 2001 through March of 2002, and that Defendants failed to pay overtime and

11

other wages to her, in violation of the FLSA.  (Compl. ¶¶ 332-44.)  Defendants contend that they provided overtime pay, holiday pay, and "Sunday premium" pay to Plaintiff during the period of time that she worked at the FAA.  (Leave and Earnings Statements, attached as Ex. HH to Bynon Cert., at 100-109, 133, 167.)

In response, Plaintiff asserts that she did not regularly receive all of the wages owed to her by Defendants.  According to Plaintiff, John Meehan, one of her supervisors, told her that she would have to wait until she returned from her FAA assignment to receive overtime pay, holiday pay, and "Sunday premium" pay, because her time sheets were too confusing.  (Deposition of Marilee Brown dated December 7, 2006, attached as Ex. 11 to Cert. of Scott Michael Mishkin, at T69:1-8.)  Whether Plaintiff's factual rebuttal is credible and sufficient to constitute a willful violation under the FLSA is a question to be reserved for the factfinder.

Defendants' alleged withholding of Plaintiff's wages constitutes a material factual issue that bars this Court from entering judgment in favor of Defendants on Count III at this time.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment, pursuant to FED. R. CIV. P. 56, shall be denied.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: May 27, 2008